335 P.2d 62

IDAHO STATE BAR: Gilbert C. St. Clair, President, Clay V. Spear, Member, and Sherman J. Bellwood, Member, comprising the Board of Commissioners of the Idaho State Bar, and individually as licensed attorneys at law of the Idaho Bar; J. Blaine Anderson, Chairman, James W. Wayne, Member, and Charles Scoggin, Member, comprising the Standing Committee on the Unauthorized Practice of Law of the Idaho State Bar, and individually as licensed attorneys of the Idaho Bar, Plaintiffs,

v.

O. K. MESERVY, Defendant.

No. 8618.

Supreme Court of Idaho.

Jan. 6, 1959.

Rehearing Denied Feb. 16, 1959.

Ralph Litton, St. Anthony, for defendant.

Raymond L. Givens, Boise, for plaintiffs.

TAYLOR, Justice.

This proceeding was commenced in this court by complaint charging that defendant had unlawfully engaged in the practice of law and that defendant had held himself out, and does now hold himself out, as qualified to practice law, all without right or authority so to do.

Defendant's objections to the complaint, raised by motion and demurrer, were determined by this court in Idaho State Bar v. Meservy, 79 Idaho 526, 325 P.2d 688. Thereafter, defendant filed his answer and this court entered its order of reference as follows:

"The above entitled matter being at issue on the complaint of plaintiff and answer of defendant, and, whereas, said pleadings present an issue of fact

"It Is Ordered that for the purpose of determining the facts the matter is referred to the Honorable John A. Carver, Pocatello, Idaho, Judge of the District Court of the Fifth Judicial District, as referee for this Court.

"Said Honorable John A. Carver will give notice to the respective parties of the time and place he fixes for said hearing and will hear such testimony as may be presented, make findings of fact, conclusions of law, and recommended order, and furnish this Court with a certified copy of all evidence and proceedings had and taken before him and make due return thereof to this Court at as early a date as is reasonably convenient for said referee."

Hearing was had before the referee at St. Anthony in Fremont county, being the county of defendant's residence, pursuant to notice, on May 6, 1958. Witnesses were sworn and examined and the cause was submitted to the referee by the parties upon written briefs. The referee made and filed herein findings of fact, conclusions of law, recommended order, and a transcript of evidence and proceedings had at the hearing. The following is a condensation of the findings:

The defendant is 80 years of age; has served as justice of the peace and probate judge in Fremont county; Reed Adelbert Winters and Loma F. Winters, husband and wife, residents of Fremont county, de-

siring to adopt an infant to be named Billy Reed Winters, sought and obtained the assistance of defendant in the preparation of the documents necessary to effect such adoption; the Winters had previously adopted another child or children and were somewhat familiar with the required procedure; that Winters' purpose in seeking the assistance of defendant was the defendant possessed a typewriter, and Winters believed that with his own previous experience he and defendant could, by following old forms possessed by Winters, prepare adequate forms for the instant adoption; that defendant at Winters' request typed certain papers, the information for which was furnished to defendant by Winters; the documents were, petition, consent, agreement and order for adoption; these papers were taken by Winters to the probate judge, who, without first requiring them to be signed, forwarded certain of them to the appropriate department of the state government for approval; upon their return, the probate judge advised Winters that the papers were defective and furnished Winters with information required to make necessary corrections; Winters again sought the assistance of defendant to redraft the documents; defendant declined to render further assistance, advising Winters that he had been informed that to do so might be deemed to be engaging in the unlawful practice of law, and advised Winters to consult an attorney; therefore, Winters, with the help of a boy of high school age who was learning to type, prepared a new set of papers which were subsequently filed in the probate court, and upon which the desired adoption was effected; at the conclusion of the drafting of the first papers, Winters paid defendant $10, which defendant thereafter returned to Winters on being advised that to make a charge for his services would be in violation of law in holding himself out as, or in acting in the capacity of, an attorney; that one, Nels T. Sahl, a duly licensed attorney, and the prosecuting attorney of Fremont county, called defendant and inquired if defendant had prepared adoption papers for Winters and was advised by defendant that he had, and that defendant had charged $10 therefor; that witness Sahl then advised defendant that such acts might constitute the unauthorized practice of law. The referee further found:

"That the defendant at no time represented to Mr. Winters that he was competent or qualified to practice law, or that he held himself out to Mr. Winters as being competent or qualified to practice law, and the Court further finds from the evidence in this case, and as shown by the record, that the defendant did not to Mr. Winters, or to anyone else, claim, or hold himself out, to be competent or qualified to give legal advice, or competent or

qualified to prepare legal documents, or to draft legal papers."

From the facts found, the referee concluded:

"That the defendant's services rendered to Reed Adelbert Winters in the typing and preparation of Plaintiffs' Exhibits 'A' through 'D' inclusive, and his acceptance in the first instance of a payment of ten dollars for said services without having made a specific charge therefor, and his later return to Mr. Winters of said monetary consideration upon being advised that his actions in accepting said fee for said services could be deemed the unauthorized practice of law on his part, does not constitute a violation of the spirit and intent of the statutes of this state with regard to the unauthorized practice of law by one not holding a license to so practice."

The recommendation of the referee is that the complaint be dismissed.

Supplementing the findings, we note from the transcript that Winters testified that he provided the information, and told the defendant what to put in the papers originally drafted by defendant and Winters; that defendant made no charge for his services and the payment to him of the $10 was voluntarily done by Winters.

Thus, it appears there is a conflict in the inferences, and implications, to be drawn from the testimony of Winters and the testimony of attorney Sahl, who testified to statements made by defendant to him.

"The practice of law as generally understood, is the doing or performing services in a court of justice, in any matter depending [sic] therein, throughout its various stages, and in conformity with the adopted rules of procedure. *But in a larger sense,* it includes legal advice and counsel, and the *preparation of instruments and contracts by which legal rights are secured, although such matter may or may not be depending [sic] in a court."* In re Matthews, 57 Idaho 75, at page 83, 62 P.2d 578, at page 581, 111 A.L.R. 13. 7 C.J.S. Attorney and Client § 3 g.

The drafting of the documents alleged to have been prepared by defendant, or the giving of advice and counsel with respect thereto, by one not a licensed attorney at law, would constitute an unlawful practice of law, whether or not a charge was made therefor, and even though the documents or advice are not actually employed in an action or proceeding pending in a court. I.C. § 3–104; In re Brainard, 55 Idaho 153, 39 P.2d 769; Wayne v. Murphey-Favre & Co., 56 Idaho 788, 59 P.2d 721; In re Matthews, 57 Idaho 75, 62 P.2d

578, 111 A.L.R. 13; In re Matthews, 58 Idaho 772, 79 P.2d 535; Paul v. Stanley, 168 Wash. 371, 12 P.2d 401; State ex rel. Beck v. Wichita Ass'n of Credit Men, 142 Kan. 403, 49 P.2d 1041; People v. Ring, 26 Cal.App.2d Supp. 768, 70 P.2d 281; People v. Sipper, 61 Cal.App.2d Supp. 844, 142 P.2d 960; People ex rel. Attorney General v. Newer, 125 Colo. 304, 242 P.2d 615; Washington State Bar Ass'n v. Washington Ass'n of Realtors, 41 Wash.2d 697, 251 P.2d 619; In re Baker, 8 N.J. 321, 85 A.2d 505; People ex rel. Illinois State Bar Ass'n v. Schafer, 404 Ill. 45, 87 N.E.2d 773.

Here, as we have indicated, the evidence is conflicting as to whether defendant actually drafted the documents attributed to him, or advised Winters as to the sufficiency or legal effect thereof. The evidence does not show that defendant wilfully and knowingly violated the law. His acts do not indicate contempt of the law or of the courts. We recognize that ignorance of the law does not excuse unauthorized practice. However, one of the objects of contempt proceedings is to punish the wrongdoer, and his attitude, and circumstances of aggravation or mitigation, are pertinent to that purpose.

The other, and a primary, purpose of contempt and injunction proceedings in such cases, is to protect the public against unskilled and unauthorized would-be practitioners. I.C. § 3-401; In re Wourms, 31 Idaho 291, 170 P. 919; In re Brainard, 55 Idaho 153, at page 160, 39 P.2d 769; In re Carter, 59 Idaho 547, 86 P.2d 162; In re Baker, 8 N.J. 321, 85 A.2d 505.

As the referee found, defendant did not hold himself out as competent or qualified to practice law. His conduct in declining to assist Winters further and in returning to him the $10, after being advised that his acts might be unlawful, indicate good faith on his part, and that an injunction against future unauthorized practice is unnecessary.

The findings and conclusions of the referee, being supported by the record, are adopted, and the proceeding is ordered dismissed.

Costs to defendant. I.C. Title 3, Chap. 4; Chastain's, Inc. v. State Tax Commission, 72 Idaho 344, 241 P.2d 167.

PORTER, C. J., concurs.

KEETON, C. J., concurred in this opinion prior to his retirement.

SMITH, Justice (dissenting).

Defendant Meservy in the past served as a justice of the peace and as a probate judge. [Finding I.] Winters, knowing of defendant's previous experience in adoption proceedings, as a probate judge, sought out defendant "for the purpose of *assisting him*,

the said Winters, *in* the *preparation of* the *necessary papers to effect the adoption* of the child." [Finding IV.] Winters believed that *"he and the defendant, Meservy, could \* \* \* prepare* the *adequate forms required for the instant adoption."* [Finding V.] When the adoption papers were returned by the probate judge as defective, Winters *"again solicited the assistance of defendant Meservy in redrafting the said documents,"* Exhibits A to D, inclusive, being: petition for adoption, consent to adoption, agreement of adoption and order of adoption. [Finding VII.] At the *conclusion of defendant's services in the preparation of the adoption papers* Winters gave defendant $10 for his assistance rendered. [Finding IX.] Defendant admitted to the Fremont County prosecuting attorney that *he had prepared* certain *adoption papers* for Winters, and had charged $10 for *preparing or helping to prepare said papers.* [Finding X.] Defendant did not hold himself out as competent or qualified to give legal advice, or prepare or draft legal instruments. [Finding XI.] The referee failed to find whether defendant was or was not admitted to the practice of law at the time of preparation of the adoption papers; however, this Court will take judicial notice of its records relative to those admitted to the practice of law. Those records fail to show that defendant at said time was admitted to the practice of law in this state.

In summary, the referee found that defendant had served as probate judge; that while he did not hold himself out as competent or qualified to give legal advice or prepare legal papers, nevertheless, at the solicitation of Winters, defendant did assist in the preparation of requisite instruments to effect the adoption of a child; that Winters, when the papers were found defective, *again solicited defendant's assistance in redrafting said documents;* that Winters paid defendant $10 for his services in preparation of the adoption papers; that defendant admitted to the Fremont County prosecuting attorney that he had prepared or helped to prepare the adoption papers and had charged $10 therefor.

The referee then erroneously concluded that defendant's services in the preparation of the adoption papers could not be deemed unauthorized practice of law.

Here the question, concerning the inferences which may be drawn from the testimony, does not appear to be presented since the referee made his findings on the evidence and the inferences therefrom that defendant aided in the preparation of legal instruments to effect an adoption and charged a fee therefor.

The preparation of instruments by which legal rights are secured constitutes the practice of law. In re Matthews, 57 Idaho 75, 62 P.2d 578, and citations set forth in the majority opinion.

I therefore dissent from the majority opinion insofar as the conclusions of the referee are held supported by his findings, since the referee clearly found in favor of the theory of unlawful practice of law; and such is the only logical conclusion to be drawn from those findings; further, such findings are supported by the evidence, with conflicts in the evidence resolved by the findings in favor of the theory of unlawful practice of law.

McQUADE, J., concurs in this dissent.