UTAH STATE BAR, Plaintiff and Appellee,

v.

SUMMERHAYES & HAYDEN, PUBLIC ADJUSTERS, a Utah Corporation; Melodie J.M. Summerhayes; Susan L. Hayden; Bruce A. Davis dba Davis & Davis Public Adjusting; and Ronald S. Bennett, Defendants and Appellants.

No. 940375.

Supreme Court of Utah.

Nov. 3, 1995.

Carman E. Kipp, Gregory J. Sanders, Stephen A. Trost, Salt Lake City, for appellee.

Robert H. Wilde, J.C. Ynchausti, Midvale, for appellants.

Jennifer L. Falk, Salt Lake City, for amicus National Association of Public Insurance Adjustors (NAPIA).

STEWART, Associate Chief Justice:

Defendant Summerhayes & Hayden, Public Adjusters, a Utah corporation, and individual defendants Melodie J.M. Summerhayes and Susan L. Hayden (collectively "Summerhayes & Hayden") appeal from the trial court's grant of summary judgment in favor of the Utah State Bar enjoining defendants from engaging in the practice known as third-party adjusting. Summerhayes & Hayden contend that the trial court erred in finding that the practice of third-party adjusting constitutes the unauthorized practice of law because the Legislature authorized the practice in title 31A of the Utah Insurance Code.

## I. FACTS

Melodie J.M. Summerhayes and Susan L. Hayden, principal officers and agents of the defendant corporation, are licensed public adjusters, pursuant to Utah Code Ann. §§ 31A–26–101 to –311, and are in good standing with the Utah Department of Insurance. Since July 1989, Summerhayes & Hayden have participated in and supervised the adjusting of first-party and third-party claims under insurance policies.

"First-party adjusting" occurs when an insured hires a public adjuster to assist the insured in filing a claim of loss with its insurer. First-party adjusting is based on contract law. *Beck v. Farmers Ins. Exch.,* 701 P.2d 795 (Utah 1985). The insurance policy, as the contract between the insured and the insurer, delineates the rights of the parties. The adjuster is hired to assist the insured in determining the amount of loss recoverable under the policy. The adjuster documents and measures damages, gathers relevant facts, determines repair or replacement costs, and submits the claim to the insurance company. The adjuster then negotiates with the insurance company, or the insurance company's adjuster, to obtain the best settlement for the insured. As compensation, the adjuster receives a percentage of the settlement amount recovered under the policy.

"Third-party adjusting" occurs when an adjuster represents a stranger to the insurance contract on a claim asserted against a tortfeasor. Third-party adjusting is not based on principles of contract law but on principles of common law tort. There is no legal relationship between the party asserting the claim and the insurance company. *See Pixton v. State Farm,* 809 P.2d 746, 750 (Utah Ct.App.1991). Thus, the third-party adjuster must determine the extent of the

liability, rights, and duties of the parties before attempting to resolve the issue of a settlement amount.

In their practice of third-party adjusting, Summerhayes and Hayden represent persons injured in accidents, advise them concerning benefits they are entitled to, and receive a fee based on a percentage of the settlement amount recovered from the tortfeasor's insurance company. Specifically, appellants investigate their clients' injuries and damages by taking pictures of the accident scene; requesting medical records and statements; requesting police reports; conducting personal interviews with clients; investigating officers, witnesses, and other claims adjusters; and researching similar cases. After investigating, appellants negotiate with insurance company claims adjusters in an effort to settle their clients' claims. The clients review each offer and counteroffer made to the insurance company until they agree upon a settlement. If a satisfactory settlement is not obtained or appellants believe legal representation is necessary, they refer the client to an attorney licensed with the Utah State Bar. Summerhayes and Hayden are not admitted to practice law within the State of Utah; they have not represented that they are licensed attorneys, nor have they performed services in court for their clients.

In December 1990, the Bar commenced this action, alleging that third-party adjusting was the unauthorized practice of law and seeking a declaratory judgment and injunctive relief prohibiting Summerhayes & Hayden from engaging in third-party adjusting. On cross-motions for summary judgment, the trial court ruled in favor of the Bar and entered a permanent injunction prohibiting Summerhayes & Hayden from engaging in third-party adjusting. The trial court ruled that the practice of public adjusters in representing injured persons with claims against tortfeasors through negotiation with insurance companies constituted the unauthorized practice of law. The court rejected appellants' contention that the Legislature authorized public adjusters to perform third-party adjusting and ruled that third-party adjusting was not authorized under title 31A of the Utah Insurance Code. The trial court also denied appellants' oral motion to stay the injunction pending appeal. This Court subsequently granted a motion to stay the injunction entered against appellants pending the disposition of this appeal on its merits.

■ On appeal, Summerhayes & Hayden argue that the trial court erred on two points: first, in ruling that the Legislature did not authorize public adjusters to perform third-party adjusting and, second, in holding that third-party adjusting is the unauthorized practice of law. Thus, the issue presented to this Court is whether third-party adjusting by licensed public adjusters constitutes the practice of law and, if so, whether public adjusters have been authorized to perform third-party adjusting. We review the trial court's grant of summary judgment for correctness, affording no special deference to the trial court's legal conclusions. *Jackson v. Righter*, 891 P.2d 1387, 1389 (Utah 1995).

## II. THE PRACTICE OF LAW

Appellants assert that, in performing third-party adjustments, public adjusters do not perform services in a court or with respect to any matter pending in court. They admit that they execute contingent fee contracts with clients, advertise their specialty in personal injury adjustments, and negotiate with tortfeasors' insurers to settle claims. Appellants contend that these actions do not constitute the practice of law.

■ The practice of law, although difficult to define precisely, is generally acknowledged to involve the rendering of services that require the knowledge and application of legal principles to serve the interests of another with his consent. *See Nelson v. Smith*, 107 Utah 382, 391, 154 P.2d 634, 638 (1944); *Unauthorized Practice of Law Comm. v. Prog*, 761 P.2d 1111, 1115 (Colo.1988); *State ex rel. Stephan v. Williams*, 246 Kan. 681, 793 P.2d 234, 240 (1990); *R.J. Edwards, Inc. v. Hert*, 504 P.2d 407, 416 (Okla.1972); *Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan*, 91 Wash.2d 48, 586 P.2d 870, 875 (1978). It not only consists of performing services in the courts of justice throughout the various stages of a matter,

but in a larger sense involves counseling, advising, and assisting others in connection with their legal rights, duties, and liabilities. *Nelson,* 154 P.2d at 638; *see Merco Constr. Eng'rs, Inc. v. Municipal Court,* 21 Cal.3d 724, 147 Cal.Rptr. 631, 633–34, 581 P.2d 636, 639 (1978); *State Bar v. Superior Court,* 207 Cal. 323, 278 P. 432, 437 (1929); *Idaho State Bar v. Villegas,* 126 Idaho 191, 193, 879 P.2d 1124, 1126 (1994); *Eley v. Miller,* 7 Ind.App. 529, 34 N.E. 836, 837–38 (1893); *People v. Alfani,* 227 N.Y. 334, 125 N.E. 671, 673 (1919). It also includes the preparation of contracts and other legal instruments by which legal rights and duties are fixed. *Malia v. Giles,* 114 P.2d 208, 212 (Utah 1941); *see Bennion, Van Camp, Hagan & Ruhl v. Kassler Escrow, Inc.,* 96 Wash.2d 443, 635 P.2d 730, 732 (1981).

 This Court has the exclusive authority to regulate the practice of law in Utah. Utah Const. art. VIII, § 4; *Bailey v. Utah State Bar,* 846 P.2d 1278, 1281 (Utah 1993); *Barnard v. Utah State Bar,* 804 P.2d 526, 528 (Utah 1991). This authority includes the power to determine what constitutes the practice of law and to promulgate rules to control and regulate that practice. There is little in Utah case law that assists in the determination of which specific acts, beyond the representation of another's legal interests in a court of law, constitute the practice of law. What constitutes the practice of law in any given situation requires a case-by-case decision, and therefore, each case must be evaluated to determine whether the particular acts involved constitute the practice of law.

 The practice of third-party adjusting by public adjusters falls clearly within the definition of the practice of law. In third-party adjusting, an adjuster represents an injured client in making a claim under a liability insurance contract against an insurance company that insures or indemnifies a third person who is or may be liable for the injury caused to the adjuster's client. Because no agreement or contract exists between the claimant and the insurance company, the claim cannot be settled by merely allocating the risk according to the insurance contract, as is done in first-party adjusting.

Consequently, to give any advice, counsel, or facilitate a settlement, the adjuster must determine the legal rights, duties, and relationships of the different parties.

For example, after making an objective valuation of damages, an adjuster, to adequately serve the client's interests, must make a judgment of the extent to which that valuation should be compromised in settlement negotiations. Such a determination necessarily requires legal knowledge and skill and the application of abstract and complex legal principles—such as comparative fault, the elements of negligence, and rules governing liability—to the concrete facts of a particular claim. Even in an uncomplicated case, fair settlement of a claim requires knowledge of the underlying legal principles that reveal the strength of the claimant's bargaining position. It is only after making such legal judgments that an adjuster can attach an educated and fair value to the client's claim and negotiate a fair settlement.

Moreover, in the negotiation of a third-party claim, an adjuster must consider legal principles that may affect a claimant's legal ability to pursue the claim, such as statutes of limitation, jurisdictional issues, and affirmative defenses. Thus, even though adjusters do not perform services for their clients in a court of law, the practice of third-party adjusting requires knowledge and application of legal principles and involves advising, counseling, and assisting clients in connection with their legal rights and duties. In short, third-party adjusting is the practice of law.

Other courts considering the issue are in accord. For example, in *Idaho State Bar v. Villegas,* 126 Idaho 191, 193, 879 P.2d 1124, 1126 (1994) (per curiam), the court held that third-party adjusting involves analyzing legal rights, issues, and duties and that, therefore, the acts of negotiating, evaluating, and settling third-party personal injury or property claims constitute the practice of law. Similarly, in *Fitchette v. Taylor,* 254 N.W. 910, 911–12 (Minn.1934), the court held that the activity of a public adjuster in interviewing witnesses, negotiating the settlement of a third-party claim, and advertising for clients was the practice of law. In *Brown v. Unauthorized Practice of Law Committee,* 742

S.W.2d 34, 42–43 (Tex.Ct.App.1987), the court held that third-party adjusting constituted the practice of law because the adjuster gave legal advice, negotiated tort claims, and counseled clients regarding the acceptance of a settlement. *See also Professional Adjusters, Inc. v. Tandon,* 433 N.E.2d 779, 782–83 (Ind.1982); *Dauphin County Bar Ass'n v. Mazzacaro,* 465 Pa. 545, 351 A.2d 229, 234 (1976).

Difficult legal issues are inextricably connected with third-party adjustment of personal injury and property damage claims. Proper settlement and negotiation of third-party claims, including determination of legal duties, proximate cause, damages, and defenses, require legal knowledge and skills. Although we agree with appellants that the acts of executing a contingency fee arrangement and advertising their specialty may not, of themselves, constitute the practice of law, we hold that the practice of third-party adjusting is the practice of law.

### III. AUTHORIZATION OF THIRD-PARTY ADJUSTING

 Having decided that the practice known as third-party adjusting is the practice of law, we must next determine whether the practice of third-party adjusting by public adjusters is the unauthorized practice of law. The power of this Court to regulate the practice of law is explicitly set forth in article VIII, section 4 of the Utah Constitution: "The Supreme Court by rule shall govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law." This Court has not authorized public adjusters to perform third-party adjusting.

Appellants contend that the trial court erred in concluding that they were engaged in the unauthorized practice of law because the Legislature unambiguously authorized both first-party and third-party adjusting. Appellants direct us to Utah Code Ann. § 31A–26–102, which provides:

As used in this chapter, unless expressly provided otherwise:

(1) "Insurance adjusting" or "adjusting" means directing the investigation, negotiation, or settlement of a claim under an insurance policy, on behalf of an insurer, policyholder, or a claimant under an insurance policy.

. . . .

(5) "Public adjuster" means a person required to be licensed under Section 31A–26–201, who engages in insurance adjusting as a representative of insureds and claimants under insurance policies.

Appellants insist that investigating, negotiating, and settling claims for and on behalf of "claimants under insurance policies" refers to third-party adjusting, while first-party adjusting is distinguished by specific reference to insureds and policyholders.[1]

 Appellants' argument is without merit. When construing a statute, we must determine the legislative intent, and "the best evidence of legislative intent is the plain language of the statute." *Sullivan v. Scoular Grain Co. of Utah,* 853 P.2d 877, 879 (Utah 1993); *see K & T, Inc. v. Koroulis,* 888 P.2d 623, 627 (Utah 1994). We presume that the Legislature used each word advisedly, and we give effect to each term according to its ordinary and accepted meaning. *Versluis v. Guaranty Nat'l Cos.,* 842 P.2d 865, 867 (Utah 1992). Additionally, words and phrases used in a statute, if also defined by statute, must be construed according to that definition. Utah Code Ann. § 68–3–11 (1993); *Sullivan,* 853 P.2d at 879; *Cannon v. McDonald,* 615 P.2d 1268, 1270 (Utah 1980).

The statute authorizing public adjusting, title 31A, chapter 26, does not contain the term "third-party adjusting," nor does it describe the practice. Presuming that the Legislature advisedly used or chose not to use specific words and phrases, the plain language of the statute reveals that public ad-

---

1. In response, the Bar argues that any attempt by the Legislature to authorize public adjusters to practice law would conflict with the judicial power under article VIII, section 4 of the Utah Constitution and would violate the separation of powers doctrine. Because we hold that the Legislature did not authorize public adjusters to practice third-party adjusting, we need not address this issue.

justers have not been authorized by the Legislature to perform third-party adjusting.

The statutory definition of the word "claim" also refutes appellants' argument. As defined in Utah Code Ann. § 31A–1–301(14.5), "claim" means a request or demand on an insurer for payment of benefits according to the terms of an insurance policy. Because the person asserting a claim in a third-party adjustment scenario is not named or provided for in the terms of the insurance contract, "claimant[s] under an insurance policy" cannot be construed to include them. Such a claim would not be settled according to the terms of the insurance policy as required by the statutory definition of "claim" but would be settled in a tort liability context. Therefore, in compliance with statutory definition, "claimant[s] under an insurance policy" as used by the Legislature does not authorize third-party adjusting of claims.

Moreover, interpreting the language of section 31A–26–102 as not allowing public adjusters to practice third-party adjusting furthers the purposes of chapter 26 and best serves to protect the public welfare. Two purposes of chapter 26 are "[to] encourage fair and rapid settlement of claims" and "to protect claimants under insurance policies from unfair claims adjustment practices." Utah Code Ann. § 31A–26–101. Third-party tort claims against insurance companies can be complex and necessarily require education and knowledge that most laypersons do not possess. It would be far more difficult, time consuming, and perplexing for a person not trained in tort law to fairly and rapidly settle a claim. Moreover, public adjusters could jeopardize an injured person's legitimate tort claim against an insurance company due to lack of education and experience. Such lack of experience can easily result in failure to assert appropriate legal theories and failure to meet procedural requirements. The public welfare is best served by construing chapter 26 as allowing public adjusters to adjust first-party claims against insurance companies but not third-party claims.

Appellants argue that by adopting the language "claimants under insurance policies" in the 1986 amendments to chapter 26, the Legislature manifested an intent to broaden the class of people for whom adjusting could be performed to include more than insureds and policyholders. However, the Legislature did not express any intent in the 1986 amendments to alter the traditional functions of insurance adjusters. In section 31A–26–101, the Legislature set forth various purposes for title 31A, chapter 26, but none of those purposes could be construed to allow the practice of insurance adjusting Utah Code Ann. § 31A–26–101. In addition, if we were to adopt appellants' contention that the phrase "claimant under insurance policies" is intended to authorize third-party adjusting, it would have a significant impact upon the practice of law within the state. It seems highly unlikely that the Legislature would attempt, or even intend, to alter the practice of law by an amendment to the definition of public adjusters within the insurance code.

For the foregoing reasons, we hold that the practice of third-party adjusting by public adjusters is the unauthorized practice of law. Accordingly, we affirm the trial court's grant of summary judgment and issuance of a permanent injunction enjoining appellants from practicing third-party adjusting.

Affirmed.

ZIMMERMAN, C.J., and HOWE, DURHAM, and RUSSON, JJ., concur in the opinion of STEWART, Associate C.J.